(Case of a Road in Bucks County.)

---

[PHILADELPHIA, JANUARY 8, 1838.]

## CASE OF A ROAD IN BUCKS COUNTY.

Wharton.
3wh105
134  413

### CERTIORARI.

In April, 1836, a petition was presented to the Court of Quarter Sessions of Bucks County, praying for the appointment of a jury to view and lay out a certain road. Viewers were accordingly appointed, who reported that they had viewed and laid out the road applied for. Their report was filed at September Sessions, 1836, and confirmed *nisi* on the 13th of September. At December Sessions, 1836, upon petition, a jury of review was appointed, who reported to February Sessions, 1837, that they were, not able to agree. This report was confirmed *nisi* on the 14th of February. On the 13th of May, 1837, the clerk of the Sessions issued an order to open the road, as laid out by the viewers; which order was quashed by the Court of Quarter Sessions; and the Supreme Court, on appeal, affirmed the decree of the Sessions quashing the order.

(Case of a Road in Bucks County.)

THIS case came before the Court on a *certiorari* to the Court of *Quarter Sessions of Bucks county, to remove the proceedings in the matter of a decree quashing the order [*106] to open a road beginning at the end of a road leading from Watson's mill, in the township of Buckingham, to the Old York road, thence till it intersects a public road leading from the Durham road to Burlington, in the said township.

The record presented the following case.

At a Court of Quarter Sessions of the Peace, held on the 27th day of April, 1836, a petition was presented, praying for the appointment of a jury to *view* and lay out the above-mentioned road.   Whereupon the Court appointed a jury, who reported that they had viewed and laid out the road prayed for; which report was filed at September Sessions, 1836, and was confirmed *nisi* on the 13th of September, 1836.

At December Sessions, 1836, upon petition, a jury of *review* was appointed, who reported as follows, to wit:

"We, the persons appinted to review the road within mentioned, and parts adjacent, having been sworn or affirmed according to law, did review the same, and report that *we cannot agree.*"

This report was signed by five of the jurors, and was made to February Sessions, 1837, and confirmed *nisi* on the 14th of February.

No further proceedings were had in the case until the 13th of May, 1837, when, upon application to the clerk of the Sessions, he issued an order to open the road as laid out by the viewers— the April Sessions having intervened between the filing of the report of the viewers and the taking out the order to open the road.

At an adjourned Court of Quarter Sessions, held on the 19th of June, 1837, on motion of the counsel of the petitioners for the *review*, the Court quashed the order which had been taken out to open the road;

Whereupon this *certiorari* was sued out; and the decree of the Court quashing this order was assigned for error.

Mr. *Ross*, for the appellant, referred to the act of 13th June, 1836, and contended, that the Court below ought not to have quashed the order for opening the road.

Mr. *Miles*, *contra*, cited the *Case of the Hatfield Road*, (4 Yeates, 392).

The opinion of the Court was delivered by

(Case of a Road in Bucks County.)

[*107]    *KENNEDY, J.—The matter complained of here, as error in the Court below, is, that the Court quashed an order issued by the clerk of the Court during its recess, for opening the road as reported by the viewers.

If there was no previous order or decree of the Court authorizing the issuing of such order, the Court were right in quashing it. The petition for the road, the appointment of the viewers, and their report were all, most probably, made under the act of 1802 and its supplements, as the report of the viewers appears to have been filed at the session of the Court held in the early part of September, 1836, and the late act on the subject did not come into operation until the first of that month. The act of 1836 only repeals the prior laws thereby altered and repealed, *so far* as they are *inconsistent* with it. And as the duty imposed upon the viewers, and the manner prescribed thereby for the performance of it, seem to be the same as ·by the former laws, it does not appear that any valid objection, growing out of the last law, could have been made to the Court's receiving the report of the viewers, and acting upon it in the same manner as if it had been authorized and wholly made under the same. This being the case, the Court received it, and on the 13th of September, 1836, directed the entry of "confirmed *nisi,*" to be made on it. The meaning of this entry, most probably, was understood by the Court at the time, though we can only conjecture what was intended by it. But we may reasonably conclude that it was not designed to be a direction to the clerk to make out an order for opening the road of any particular width in the event that followed, which was the appointment, by the Court, at the following session thereof, of reviewers, according to the prayer of a petition duly presented for that purpose; otherwise the Court would not have quashed the order issued by the clerk for opening the road. The 4th section of the act of 1836, Purd. Dig. (by Stroud,) 884, directs what the Court shall do, if they approve of the report of the viewers allowing a road : the direction. is in these words, "They (the Court) shall direct of what breadth the road *so approved* shall be opened; and *at the next Court thereafter,* the whole proceedings shall be *entered on record;* and *thenceforth* such road shall be *taken, deemed,* and *allowed* to be a *lawful* public *road* or *highway,* or private road, as the case may be." By the 25th section, page 886, it is farther directed, that "in all cases of views for any purpose mentioned in the act, the Court *shall,* on petition of *any person interested,* direct a second view or review for the same purpose : *Provided,* That *application* therefor be made *at* or *before* the *next term* of the said Court *after the report upon the first view."* These two sections taken together show conclusively,

(Case of a Road in Bucks County.)

that no road can be considered as established finally, until the next Court after it shall have been *approved* by the Court, and an order made by the same, directing it to be opened of a certain breadth, therein to be specified. This order may be made at the Court to which *the report of the viewers is first made, and if the attention of the Court be called to the report [*108] then, and it be approved of, it would seem to be the time at which the act requires it to be done: but whether done then or at a subsequent Court, the road cannot be finally established, and entered upon record as a road, before the next Court following that at which the order for opening the road shall have been made. And as it is obvious that this delay is allowed for the purpose of affording those who may be opposed to the road, if there should be any such, time to come forward and make their objections, by presenting their petition, containing the same, to the Court, and asking for a review thereof by reviewers to be appointed by the Court for that purpose, it would therefore seem to follow as a natural consequence, that if such petition for a review be presented at the next Court after the report of the viewers in favour of the road, which is within the time allowed by the act of assembly, and reviewers are appointed by the Court, a thing they are bound to do, and cannot refuse, the order made for opening the road is thereby superseded; and the road reported cannot be opened, nor entered upon the records of the Court as an established road, until some farther action of the Court be had thereon. Then assuming that the Court, by directing the entry of "confirmed *nisi*" to be made on the report of the viewers in favour of the road, intended it as a direction to the clerk to enter a decree approving of the road, and for opening it of a certain breadth, according to some general and standing rule of the Court, which I believe has existed in some counties of the state, the petition presented at the succeeding Court, making objections to it and asking for a review, and the appointment of reviewers in conformity thereto by the Court, may well be considered as sufficient to prevent the order of the Court made for opening the road from taking effect until some farther order should be made thereon.

The petitioners for a review, proceeded with their order, as it would appear, by taking it out, getting the reviewers therein named, after being duly organized, to go and review the location of the road. The reviewers, however, not being able to agree on a report, either for or against the road, therefore merely reported that fact to the Court, who directed a similar entry of "confirmed *nisi*," to be made thereon, to that which was made on the first report. It is even difficult to conjecture what was intended by this entry. But we may fairly infer that it was not intended

(Huffsmith *v.* Levering.)

thereby to establish and direct the opening of the road as reported by the first set of viewers, or the Court would not have quashed the order issued to that effect by their clerk.   It is possible, however, that the Court below considered the report of the reviewers, as one in effect against the road, and by confirming it "*nisi*," may have intended thereby to set aside the report of the viewers, unless something more should be shown in favour of it.

[*109]  The report of the reviewers *certainly went to show that they were divided in opinion as to the propriety of laying out the road, from which it might be inferred, and not unfairly, I think, that it was doubtful, at least, whether it ought to be done or not.   Had the reviewers reported against it, the Court, in their discretion, might have adopted the report of the reviewers or that of the viewers.   (3 Serg. & Rawle, 236.)   But although the report of the reviewers cannot be regarded as being of the same weight against the road, as if four of them had joined in a report to that effect, yet it was of some weight in going to show that the necessity for such road was at least somewhat doubtful   And if the Court below viewed it in this light, I am not prepared to say, that they were bound to grant the road; though it may have been a very proper case for the Court to have directed another view, if either side had applied for it.

Upon examination of the whole record, we are not able to discover any previous decree of the Court, authorising the clerk to issue the order for opening the road and therefore cannot undertake to say that the Court erred in setting it aside.   Neither can we say from the proceedings that were had in the case, and from what may have been shown to the Court below, that they were bound to have made an order establishing the road and for opening it.—The order of the Court below is therefore affirmed.

Judgment affirmed.

Cited by Counsel, 5 Wharton, 335, 486 ; 3 Watts & Sergeant, 559 ; 5 Harris, 73 ; 6 Casey, 157 ; 2 Wright, 371.

Cited by the Court, 1 Barr, 358 ; 4 Id. 339 ; 5 Id. 515 ; 8 Id. 486 ; 5 Casey, 22.

---

[*110]          *[PHILADELPHIA, JANUARY 16, 1838.]